J-S04035-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KIREE GOLDEN | : | |
| | : | |
| Appellant | : | No. 829 EDA 2025 |

Appeal from the PCRA Order Entered March 14, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010170-2009

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.: **FILED FEBRUARY 23, 2026**

Appellant, Kiree Golden, appeals *pro se* from the post-conviction court's March 14, 2025 order denying, as untimely, his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

This Court briefly summarized the facts underlying Appellant's convictions in our decision affirming his judgment of sentence, as follows:

> During the evening of February 5, 2008, Kuame Burkett … was shot and killed. Burkett was with a number of friends outside of a corner store located at the intersection of Brown and 16th Streets in Philadelphia when [Appellant] and two other men, Iyube Bundy and Mathew Bundy, approached the corner. Burkett, who had been horsing around with one of his friends, ran a short distance down the block and sat on a set of steps. Shortly thereafter, [Appellant] approached Burkett, shot him multiple times and fled. As [Appellant] fled, Iyube Bundy approached Burkett, also shot him multiple times and fled in the same direction as [Appellant]. Burkett was shot in his head, chest, lower back and right thigh. He died from these gunshot wounds.
>
> [Appellant], Iyube Bundy[,] and Mathew Bundy were tried together before a jury in June 2012. [Appellant] was found guilty

of [first-degree murder, conspiracy to commit murder, and carrying a firearm on a public street in Philadelphia.[1]] He was subsequently sentenced to life imprisonment for the first-degree murder conviction, and no further penalty was imposed for the remaining convictions.

*Commonwealth v. Golden*, No. 2127 EDA 2012, unpublished memorandum at 1-2 (Pa. Super. filed Oct. 29, 2013). Appellant filed a timely appeal from his judgment of sentence, and this Court affirmed. *Id.* Our Supreme Court denied Appellant's subsequent petition for allowance of appeal on April 28, 2014. *See Commonwealth v. Golden*, 89 A.3d 1283 (Pa. 2014).

Appellant filed a timely *pro se* PCRA petition in April of 2015, and counsel was appointed. That petition was ultimately dismissed without a hearing, and after this Court affirmed on appeal, our Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Golden*, 2634 A.3d 380 (Pa. Super. 2021) (unpublished memorandum), *appeal denied*, 274 A.3d 721 (Pa. 2022).

On September 15, 2023, Appellant filed his second *pro se* petition, which underlies the instant appeal. Therein, Appellant alleged the discovery of the following new facts, which he claims warrant a new trial:

After [Appellant] was appointed federal *habeas* counsel through the Federal Community Defender Office (FCDO), FCDO investigator Richard Ruffin was able to locate and interview two of

_____

[1] 18 Pa.C.S. §§ 2502(a), 903, 6108, respectively.

the witnesses who testified at trial, Joselis Rubio[2] and Robert Gray. [] Gray provided a declaration reaffirming his testimony at the preliminary hearing and stating that he did not know [Appellant] at the time of [] Burkett's shooting and did not see him shoot [] Burkett. He stated that[,] although he was only 17 years old at the time of his interview, the detectives refused to allow his mother to be present. They insisted that he must have seen who shot [] Burkett and told [] Gray that they already knew what happened. He ultimately signed "several sheets of paper" so that he could go home. He explained that he was never shown a photo array and that the detectives presented him with "a stapled stack of papers and asked [him] to sign the bottom of each one, flipping over the left-hand corner of each page for [him] to sign, but not showing [him] what each page contained."

[] Rubio did not sign a declaration, but Investigator Ruffin prepared a declaration summarizing his conversation with [] Rubio. In that conversation, [] Rubio stated that he was not at all confident in his identification of [Appellant,] and that he never saw the first shooter's face because he was only able to see him running from the side while he was wearing a hood. He said he chose [Appellant's] photo from the array because he felt pressured and because the police seemed happy when he chose the photo. He felt more confident about his identification of Iyube Bundy - about 70 percent - because he was able to see the second shooter's face, but nonetheless stated that he chose Iyube's photo because the police made suggestive gestures indicating that was the picture he should choose.

[[] Rubio] also said that on the way to the police station, the police told him that they had already caught the men who shot [] Burkett because they had committed another crime. [] Rubio stated that he had asked detectives to show him the surveillance video from his store, but they told him it was against their policy to show the video to a citizen. When [] Ruffin showed him the surveillance video, [] Rubio explained that he had seen a man wearing a long black coat and talking outside his store just before the shooting

_____

[2] The record indicates that the full surname of this witness is "Perez-Rubio." *See* N.T. Trial, 6/18/12, at 10. However, both Appellant and the trial court shorten his surname to "Rubio." *See, e.g.*, Memorandum Attached to PCRA Petition, 9/15/23, at 12; Appellant's Brief at 6; PCRA Court Opinion, 3/14/25, at unnumbered 2. For ease of disposition and clarity, we will also use the surname "Rubio" for this individual.

took place. [] Rubio assumed that the man was the "leader" of the group because of the way he was talking to the others. He later assumed that this man was the shooter when he saw a man in a long black coat shooting at the victim. The person he believed to be the shooter had a neatly trimmed goatee, which was why he chose [Appellant's] photo from the photo array - he was the only person with a neatly trimmed goatee and fresh haircut. When [] Rubio was informed that the man he saw talking and wearing the long black coat in the video was identified as Mathew Bundy, and then saw an arrest photo of Mathew with a goatee, he stated that he would have identified Mathew as the first shooter if he had been presented with a photo array containing his picture. [] Rubio said that he did not reveal his uncertainty about his identification or the fact that police already knew who committed the crime at trial because he was afraid of going to jail. He said he had heard from different people that there could be consequences for not cooperating with the police.

Memorandum Attached to PCRA Petition at 12-13 (citations to the record omitted).

On January 24, 2025, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition on the basis it was untimely and had not met any exception to the timeliness requirements of the PCRA. The court explained:

First, you provide a declaration from Robert Gray, an eyewitness who initially provided a statement to police that identified you as the shooter; however, Gray was unavailable to testify at your trial, so his testimony from the preliminary hearing was read into the record. Gray's current declaration, dated February 25, 2023, states that he did not see you on the night of the murder, that he did not testify at trial because he did not see you on the night of the murder, and that the contents of his police statement were not true. The current declaration from [] Gray appears to mirror the evidence submitted at trial. Gray testified at the preliminary hearing that he did not see anyone who was sitting in the courtroom on that night, that he was questioned by four detectives whose names he did not recall, that he signed a statement that he did not read, and denied seeing you that night

- 4 -

or choosing your picture from a photo array. Thus, Gray recanted his identification of you at the preliminary hearing, which was read into the record at trial. As such, you have not met your burden of pleading and proving a newly discovered fact as an exception to the time bar.

Secondly, you attempted to satisfy the newly-discovered[-]fact exception by claiming you recently discovered that witness … Rubio's identification of you was questionable, and was induced by police coercion. In support thereof, you provided the statement from Richard Ruffin, an investigator for the [FCDO], which is representing you with respect to your federal *habeas* corpus petition. The statement from [Investigator] Ruffin summarizes his interview with Rubio. The entirety of this statement is hearsay, and thus cannot provide the basis for the newly discovered fact exception. A claim which rests exclusively upon inadmissible hearsay is not of a type that implicates the newly discovered evidence exception. ***Commonwealth v. Yarris***, … 731 A.2d 581 ([Pa.] 1999) ([stating that e]vidence which purportedly identifies someone other than [the] petitioner as [the] perpetrator is inadmissible hearsay, which is not of a type that would implicate the newly[-]discovered[-]fact exception); ***Commonwealth v. Brown***, 141 A.3d 491 ([Pa. Super.] 2016) ([finding that an a]ffidavit from [an] individual stating that [a] police officer was overheard confessing to [the] murder for which [the] petitioner was convicted did not constitute [a] newly[-]discovered fact to overcome [the] untimel[iness of the] petition, because [the] alleged confession was hearsay, and did not fall under [any] hearsay exception).[3]

> [3] Even assuming the statement was not hearsay, its alleged content does not demonstrate police misconduct. While Investigator Ruffin interviewed [] Rubio, the summary of his statement was that Rubio felt "pressured" by police to identify [Appellant] as shooter and that [Appellant's] trial counsel did not interview him prior to trial, and that, although he testified at trial confirming his identification of [Appellant], he did not disclose that he felt pressured by police at the time because he was "scared[."] No police officer is identified, nor is any specific allegation of misconduct alleged by [] Rubio.

Rule 907 Notice, 1/24/25, at unnumbered 1-2.

Appellant did not file any response to the court's Rule 907 notice, despite the court's advising him he had twenty days to do so. ***See id.*** at unnumbered 1.[3]  On March 14, 2025, the court issued an order and opinion dismissing his petition as untimely.  The court's rationale in its opinion mirrored that which was set forth in its Rule 907 notice.  ***See*** PCRA Court Order and Opinion (PCOO), 3/14/25, at unnumbered 2-4.  Appellant filed a timely, *pro se* notice of appeal.  It does not appear that the PCRA court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  The court relied on its March 14, 2025 opinion in satisfaction of Rule 1925(a). Herein, Appellant states one issue for our review: "Did the PCRA court err in concluding that Appellant's claims were untimely and did not meet any exception to the PCRA's time bar?"  Appellant's Brief at 4.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007).  Additionally, the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in

---

[3] We note that the "Proof of Service" attached to the court's Rule 907 notice indicates that Appellant was served with that document by first-class mail on January 24, 2025.  However, the docket entry for the Rule 907 notice does not indicate the date of service of the order, or any other information aside from the filing date and the statement, "PCRA - Dismissal Notice Under Rule 907 Filed."  This docket entry does not comply with Pa.R.Crim.P. 114(C)(2) (requiring the clerk of courts to note, ***via a docket entry***, the date the order or notice was received in the clerk's office, the date appearing on the order or notice, and the ***date of service*** of the order or court notice).

order to address the merits of a petition. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, section 9545(b)(2) requires that any petition attempting to invoke one of these exceptions "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final in 2014, after our Supreme Court denied his petition for allowance of appeal and he did not seek

further review with the United States Supreme Court. Thus, his petition filed in 2023 is untimely, and Appellant must prove that he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b) for this Court to have jurisdiction.

Appellant argues he meets the after-discovered-fact exception of section 9545(b)(1)(ii) based on the statements by Gray and Rubio. First, regarding Gray's statement, he contends that the PCRA "court erred in concluding that his current declaration merely 'mirror[ed] the evidence submitted at trial.'" Appellant's Brief at 11 (quoting PCOO at unnumbered 2). Appellant argues that,

> [a]lthough [] Gray did recant his identification of Appellant as the shooter at the preliminary hearing, his current declaration contains more than a recantation. In his current declaration, [] Gray details how the police coerced him into signing a statement he had not read: he stated that he was never shown any photo arrays containing Appellant's picture, but was instead asked to sign the bottom of sheets of paper he was not allowed to see. [] Gray's assertion of coercion and fabrication by the police thus puts his earlier recantation in context and lends it credibility.

*Id.* (citation to the record omitted).

Second, pertaining to Rubio's statement, Appellant concedes "the declaration from Investigator Ruffin is hearsay…." *Id.* at 12. However, he avers the court erred by not giving "Appellant an opportunity to prove its contents in the courtroom." *Id.* Appellant insists he "specifically alerted the court that he intended to subpoena [] Rubio's presence in court to testify to the contents of the declaration" and, thus, the court should have granted him an evidentiary hearing. *Id.* He also argues a hearing was warranted to give

him "an opportunity to demonstrate the alleged police misconduct" by producing "documents and other witnesses…." *Id.*

Third, Appellant maintains he exercised due diligence in discovering both Gray's and Rubio's statements. *Id.* at 13. Specifically, he explains he "did not have the means to interview [these] two witnesses after trial[,] and did not have access to the photographs used in the photo arrays [they] were shown until [Appellant's] federal *habeas* counsel obtained discovery from the Commonwealth" in 2022 and Investigator Ruffin "was able to find Mr. Rubio in New York City … in September [of] 2022." *Id.* Appellant stresses "he is incarcerated and indigent[]" and, therefore, he "has been unable to locate and interview witnesses over the last several years without the assistance of counsel." *Id.* He also claims because he "was not appointed counsel by the [PCRA] court or granted a hearing, he was unable to subpoena [] Rubio to court to testify to the contents of Investigator Ruffin's declaration." *Id.* Accordingly, Appellant concludes he "has proven the newly-discovered[-fact] exception to the PCRA's time bar on subsequent PCRA petitions[,] and his claims warrant a merits review." *Id.* at 14.

We disagree. First, regarding Gray's statement, the PCRA court is correct that it is cumulative of evidence presented at trial. In Gray's instant statement, he claims he did not see Appellant shoot the victim, and the statement he gave to police was not true. *See* PCRA Petition, 9/15/23, at Exhibit 1. At trial, the Commonwealth was permitted to read into the record Gray's testimony from the preliminary hearing, wherein Gray claimed he was

not present when the victim was shot, and did not see Appellant or his co-defendants that night. *See* N.T. Trial, 6/20/12, at 181-84. Gray was then confronted with the statement he had provided to police after the shooting, in which he identified Appellant from a photographic array as the person he saw shoot the victim. *Id.* at 199. Appellant now argues Gray's current statement provides more detail about the coercive tactics purportedly used by police in obtaining that out-of-court statement. However, Gray testified at the preliminary hearing the officers taking his statement "just told [him] to sign the papers[,]" and he did so without reading them. *Id.* at 186-87. Thus, the facts set forth in Gray's instant declaration are not "new," as this evidence was presented at trial.

Moreover, even if Gray's declaration provides more specifics about the coercive tactics allegedly used by police in obtaining his out-of-court statement, Appellant has not demonstrated he could not have discovered these additional details earlier, with the exercise of due diligence. Appellant does not explain why he could not have questioned Gray and learned these details after Gray testified at the preliminary hearing that the police pressured him into providing his statement. Although Appellant blames his failure to do so on his incarceration, indigency, and lack of counsel, the record confirms he was represented by counsel at the time of Gray's preliminary hearing testimony, throughout the trial proceedings, on direct appeal, and during the litigation of his first PCRA petition. Thus, Appellant's counsel could have discovered the new details set forth in Mr. Gray's declaration and raised those

claims earlier, in the exercise of due diligence. Appellant cannot meet the newly-discovered-fact exception based on Gray's statement.

Second, regarding Rubio's statement, Appellant does not dispute the PCRA court's finding Investigator Ruffin's recounting of what Rubio told him is inadmissible hearsay. As the PCRA court recognized, the Pennsylvania Supreme Court in *Yarris* declared, "[a] claim which rests exclusively upon inadmissible hearsay is not of a type that would implicate the [newly-discovered-fact] exception to the timeliness requirement, nor would such a claim, even if timely, entitle [an a]ppellant to relief under the PCRA." *Yarris*, 731 A.3d at 592; *see also* PCOO at unnumbered 3. However, recently in *Commonwealth v. Brown*, --- A.3d ----, 2026 WL 227113 (Pa. filed Jan. 28, 2026), the Court clarified "[t]his sentence [in *Yarris*] indicated that the timeliness analysis hinged upon the admissibility at trial of the after-discovered evidence. But that is not correct. The evidence only must be admissible at the evidentiary hearing." *Id.* at *17 (emphasis added). The *Brown* Court continued:

> *Yarris* does not stand for the proposition that a third-party confession can never be a newly[-]discovered fact. Under the plain language of [s]ection 9545(b)(1), such a fact can constitute a newly[-]discovered fact so long as the petitioner alleges and proves the existence of this predicate fact, that it was previously unknown, and that it could not have been ascertained earlier by the exercise of due diligence.

*Id.*

Here, Appellant does not allege how Rubio's statement would be admissible at an evidentiary hearing. Instead, he simply contends a hearing

- 11 -

is warranted because he "intend[s] to subpoena [] Rubio's presence in court to testify to the contents of the declaration…." Appellant's Brief at 12. However, according to Investigator Ruffin, when he attempted to contact Rubio "some weeks" after preparing Rubio's declaration, the investigator "did not get a response." *See* PCRA Petition at Exhibit 2 ¶ 3. Moreover, Appellant did not attach to his petition a witness certification from Rubio, signed either by Rubio or himself. *See* 42 Pa.C.S. § 9545(d)(1)(i) ("Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony."); 42 Pa.C.S. § 9545(d)(1)(ii) ("If a petitioner is unable to obtain the signature of a witness under subparagraph (i), the petitioner shall include a certification, signed by the petitioner or counsel, stating the witness's name, address, date of birth and substance of testimony.").

Furthermore, although Rubio's hearsay statement could constitute a 'new fact' that satisfies section 9545(b)(1)(ii) under *Brown*, it must still have some relevancy to a claim of relief for Appellant. "We recognize that a merits-based analysis is inappropriate at this stage." *Commonwealth v. Myers*, 303 A.3d 118, 122 (Pa. Super. 2023) (citing *Commonwealth v. Cox*, 146 A.3d 221, 227 (Pa. 2016); *Commonwealth v. Bennett*, 930 A.2d 1264, 1271 (Pa. 2007)). However,

> [w]hile *Bennett* and its progeny instruct courts to avoid analyzing the merits of the underlying claim, we believe that principle cannot go so far as to altogether preclude the courts from considering the

claim the petitioner seeks to raise in determining whether an evidentiary hearing is warranted. As an extreme example, suppose an incarcerated PCRA petitioner asserted in an untimely petition that he recently discovered that the Houston Astros won the 2017 World Series. It would defy reason to suggest that a PCRA court must hold an evidentiary hearing to carefully apply the newly-discovered[-]fact inquiry before considering how that fact could possibly matter. **Cox** stated that "[t]he function of a section 9545(b)(1)(ii) analysis is that of a gatekeeper." A gatekeeping function contemplates that there may be a reason to open the gate.

*Id.* at 122-23.

Here, the PCRA court concluded that, "[e]ven assuming [Rubio's] statement was not hearsay, its alleged conduct does not demonstrate police misconduct." PCOO at unnumbered 3. The record supports the court's decision. Investigator Ruffin claimed Rubio told him,

[h]e felt pressured to make an identification and the police were suggestive as to which person he should identify in the photo array. They guided him to the person who they wanted him to identify. First, they showed him a photo spread where all the faces had a goatee and hair braids. He had told the police that the person he believed to be the shooter had a neatly trimmed goatee…. Only one of the photos in the array showed a person who was cleanly groomed with a neat goatee. … He said he chose the photo depicting [Appellant] because he was the only one with a neat goatee and fresh haircut and because it was the photo the police seemed to want him to choose. They seemed frustrated when he was taking his time with the photos. When he pointed to other photos, they said, "You should be sure," but when he had his finger over the photo of the well-groomed person, they seemed happy.

*See* PCRA Petition at Exhibit 2 ¶ 5. Rubio also told Investigator Ruffin "he did not want to testify about the police pressure and his lack of confidence in his identification because he was scared." *Id.* at Exhibit 2 ¶ 11.

Rubio's vague assertions he "felt pressured" and police "were suggestive" during the photo array do not constitute allegations of misconduct, nor do his claims the police seemed "frustrated" he was taking his time or "happy" he identified Appellant. Thus, Appellant has not established how Rubio's statement, even if admissible, would be relevant to Appellant's obtaining relief under the PCRA. Moreover, Appellant's argument a PCRA hearing is warranted to permit him an opportunity to prove the police misconduct with "documents and other witnesses" is inadequate. Appellant's Brief at 12. As the Commonwealth correctly observes, "[a] PCRA evidentiary hearing … may not be used by a defendant to discover whether evidence exists that might support a claim for relief." Commonwealth's Brief at 22-23 (citing **Commonwealth v. Sneed**, 45 A.3d 1096, 1116 (Pa. 2012)). In other words, Appellant is not entitled to an evidentiary hearing to conduct a "fishing expedition" for evidence. **See id.** (stating "[a]n evidentiary hearing … is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim") (citations omitted).

Given this record, we discern no error of law or abuse of discretion in the PCRA court's determination that Appellant failed to meet the newly-discovered-fact exception based on Gray's and/or Rubio's statements.

Order affirmed.

- 14 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>2/23/2026</u>